IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

JO ANN DALTON,

    Plaintiff,

v.                                                                   CIVIL ACTION NO. 1:20-cv-00287

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

**PROPOSED FINDINGS & RECOMMENDATION**

Plaintiff Jo Ann Dalton ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f.  By standing order entered on January 4, 2016, and filed in this case on April 24, 2020, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 3.)  Presently pending before this Court are Claimant's Motion for Judgment on the Pleadings and supporting memorandum (ECF Nos. 12, 13) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 15).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY**

Claimant's request to reverse the Commissioner's decision (ECF No. 12), **GRANT** the Commissioner's request to affirm his decision (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I.   BACKGROUND

### A. *Information about Claimant and Procedural History of Claim*

Claimant was 39 years old at the time of her alleged disability onset date and 46 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 44.)[1]  She completed the eleventh grade. (*Id.* at 243.) Most recently, she was self-employed in senior care, and she has also worked as a bread deliveryperson, a line server at a cafeteria, and a property manager at a rental property. (*Id.* at 244.) Claimant alleges that she became disabled on January 1, 2012, due to chronic obstructive pulmonary disease, neuropathy, fibromyalgia, "Problems with left knee," "Tear in small intestines," bronchitis, high blood pressure, high cholesterol, pleurisy, "Smoking cessation," trichomoniasis, anxiety, and ulcerative colitis. (*Id.* at 242–43.)

Claimant protectively filed her applications for benefits on December 5, 2016. (*Id.* at 15, 210–22.) Her claims were initially denied on March 9, 2017, and again upon reconsideration on June 20, 2017. (*Id.* at 72–95, 98–121.) Thereafter, on July 7, 2017, Claimant filed a written request for hearing. (*Id.* at 148–49.) An administrative hearing was held before an ALJ on February 4, 2019, in Bluefield, West Virginia, with the ALJ appearing from Charleston, West Virginia. (*Id.* at 35–69.) On February 15, 2019, the ALJ rendered an unfavorable decision. (*Id.* at 12–34.) Claimant then sought review of the ALJ's decision by the Appeals Council on April 22, 2019. (*Id.* at 206–08.) The Appeals

---

[1] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 10.

Council denied Claimant's request for review on February 24, 2020, and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–6.)

Claimant timely brought the present action on April 23, 2020, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The Commissioner filed an Answer (ECF No. 9) and a transcript of the administrative proceedings (ECF No. 10). Claimant subsequently filed her Motion for Judgment on the Pleadings and supporting memorandum (ECF Nos. 12, 13), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 15). As such, this matter is fully briefed and ready for resolution.

B. *Relevant Medical Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge. The undersigned notes that although Claimant alleges a disability onset date of January 1, 2012 (Tr. at 243), the administrative record lacks any medical evidence dated earlier than February 20, 2015 (*see id.* at 389–93).

1. *Treatment for Abdominal Pain and Liver Disease*

On February 20, 2015, Claimant underwent an abdominal ultrasound that was essentially normal. (*Id.* at 392–93.) A pelvic sonogram imaged that same day showed two ovarian cysts. (*Id.* at 389.) Claimant associated her pelvic pain with the cysts and requested that her ovaries be surgically removed. (*Id.* at 365.) The procedure took place on July 20, 2015. (*Id.* at 355–56.)

A FibroScan of Claimant's liver conducted on February 23, 2016, showed "moderate fibrosis." (*Id.* at 709.)

Claimant presented to the emergency department of a local hospital on December 20, 2016, complaining of abdominal pain that had been ongoing for three weeks. (*Id.* at 398.) She also reported nausea, vomiting, diarrhea, constipation, abdominal cramps, abdominal distension, and anorexia. (*Id.*) After testing, she was diagnosed with ulcerative colitis, a urinary tract infection, and trichomoniasis and discharged home with instructions to follow up with her gastroenterologist. (*Id.* at 401.)

Claimant returned to the emergency room on January 16, 2017, "for low blood pressure," and she also reported "constant moderate abdominal pain/discomfort" and fatigue but no nausea or vomiting. (*Id.* at 395.) Upon physical examination, her abdomen "appear[ed] normal" on inspection, but there was "soft, mild abdominal tenderness, in all quadrants" on palpation. (*Id.* at 396.) A CT scan of Claimant's abdomen and pelvis revealed "Stable diffuse fatty infiltration of the liver," "Contracted gallbladder," and "Prominent lymph nodes around the distal pancreas as well as splenic hilum without significant change in size or number from prior study." (*Id.* at 424–25.) Claimant was diagnosed with hypotension and discharged home in "Improved" condition. (*Id.* at 397.)

Upon a recommendation from her primary care physician, Claimant presented to a gastroenterologist "for evaluation of enterocolitis" on February 16, 2017. (*Id.* at 507.) She reported "abdominal pain around the naval [sic] that radiates into the lower abdomen and into the left side of the abdomen," heartburn, indigestion, nausea, and constipation. (*Id.*) A physical examination of the abdomen was unremarkable. (*Id.* at 510.) The gastroenterologist recommended an endoscopy and a colonoscopy and counseled Claimant to eat a low-fat diet, lose weight, and exercise "for improvement and to help prevent progression" of liver disease. (*Id.* at 508.) He also scheduled a FibroScan and labs. (*Id.*) The FibroScan revealed "moderate fibrosis." (*Id.* at 710.) The labs showed

elevated liver enzymes. (*See id.* at 704.) Claimant was unable to undergo the endoscopy and colonoscopy due to "cardiac issues." (*Id.* at 703–04.)

Claimant returned to her gastroenterologist on June 5, 2017, and continued to report heartburn, indigestion, nausea, vomiting, abdominal pain, diarrhea, and constipation. (*Id.* at 703.) A physical examination of her abdomen was again unremarkable. (*Id.* at 706.) The gastroenterologist increased Claimant's dosage of Prilosec and counseled her to eat a low-fat diet, lose weight, and exercise. (*Id.* at 704.) He also rescheduled her endoscopy and colonoscopy. (*Id.*) However, Claimant had knee replacement surgery "and had to cancel [the endoscopy and colonoscopy] again." (*Id.* at 699.)

A November 3, 2017 abdomen ultrasound revealed "Diffuse fatty liver infiltration" and "Small amount of gallbladder sludge." (*Id.* at 778.)

At her appointment with her gastroenterologist on January 29, 2018, Claimant again reported heartburn, indigestion, nausea, vomiting, abdominal pain, and constipation. (*Id.* at 693.) A physical examination of her abdomen was unremarkable. (*Id.* at 696.) The gastroenterologist ordered an ultrasound and FibroScan "to monitor fatty liver." (*Id.* at 694.) The ultrasound, which was conducted on May 3, 2018, revealed "Diffuse fatty liver infiltration" and "Small amount of gallbladder sludge." (*Id.* at 747.)

A November 26, 2018 FibroScan of Claimant's liver showed "Cirrhosis or advanced fibrosis." (*Id.* at 708.) About a month later, on December 29, 2018, Claimant presented to the emergency department at a local hospital, complaining of a sudden onset of abdominal pain and vomiting. (*Id.* at 732.) The attending physician observed "severe" abdominal distension upon physical examination. (*Id.* at 733.) Claimant was given a

prescription for an anti-nausea medication and discharged home in "Improved" condition. (*Id.* at 735.)

    2. *Obesity*

Claimant's weight and body mass index ("BMI") were measured at various points throughout the record and ranged from 165 pounds with a BMI of 26.73 on March 18, 2015 (*id.* at 371) to her highest recorded weight at 241 pounds with a BMI of 38.89 on March 9, 2017 (*id.* at 607). On the date of her motor vehicle accident on July 4, 2016, Claimant weighed 200 pounds, with a BMI of 32.28. (*Id.* at 324.) About six weeks later, on August 15, 2016, Claimant weighed 230 pounds, and her BMI was 37.26. (*Id.* at 341.) She was measured at 190 pounds, with a BMI of 29.8, on September 19, 2016. (*Id.* at 488.)

On January 23, 2017, Claimant weighed 198 pounds and had a BMI of 32. (*Id.* at 558.) She weighed 240 pounds and had a BMI of 38.73 on April 20, 2017. (*Id.* at 604.) At an appointment with her gastroenterologist on June 5, 2017, Claimant reported that she had recently lost about twelve pounds and "is trying to lose weight." (*Id.* at 703.) On July 21, 2017, Claimant weighed 225 pounds and had a BMI of 36.31. (*Id.* at 600.) She was down to 218 pounds, with a BMI of 34.1, on December 8, 2017. (*Id.* at 654.)

Claimant weighed 214 pounds and had a BMI of 33.5 on February 26, 2018. (*Id.* at 645.) Her weight increased to 229 pounds, with a BMI of 36.93, on April 27, 2018. (*Id.* at 592.) On September 17, 2018, she weighed 200 pounds, and her BMI was 31.3. (*Id.* at 635.)

    C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

8

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert

responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements through June 30, 2012. (Tr. at 17.) He further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) He found that Claimant did not have a "severe" impairment through June 30, 2012, her date last insured, but since December 5, 2016, the date Claimant filed her SSI application, her obesity, obstructive sleep apnea, chronic obstructive pulmonary disease, coronary artery disease, history of left knee partial medial meniscectomy, fibrosis of the liver, and depressive disorder constituted "severe" impairments. (*Id.* at 17–18.) However, he found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18–20.) Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform sedentary work" except "she can never climb ladders, ropes, or scaffolds" and "she can occasionally balance, kneel, stoop, crouch, crawl, and climb ramps and stairs." (*Id.* at 20.) He further determined, "She must avoid exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as unprotected heights and moving machinery" and "must avoid concentrated exposure to extreme heat, extreme cold, and vibration." (*Id.*) In addition, the ALJ found that Claimant "can understand, remember, and carry out no more than simple instructions and complete no more than simple, routine, repetitive tasks in a work environment involving no rapid pace or strict production quotas," "can tolerate no more

than occasional interaction with supervisors, co-workers, and the public," and "must work in a stable work environment, defined as involving no more than occasional changes to the routine work setting." (*Id.* at 20–21.)

The ALJ concluded that Claimant "has no past relevant work." (*Id.* at 26.) He noted that Claimant is "a younger individual age 45–49" with "a limited education" and that "[t]ransferability of job skills [was] not an issue because the claimant does not have past relevant work." (*Id.* at 27.) Because the ALJ determined that Claimant was unable to perform the full range of sedentary work, he enlisted a vocational expert to aid in his finding that Claimant is capable of working as an addresser, patcher, or electronics worker. (*Id.* at 27–28.) As a result, the ALJ concluded that Claimant was not "under a disability . . . from January 1, 2012, through the date of this decision." (*Id.* at 28.)

## II. LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that

of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

### III. ANALYSIS

Claimant argues that the ALJ failed to account for the limitations caused by her fibrosis of the liver and her obesity in his RFC assessment. (ECF No. 13 at 9–13.) She asks this Court to reverse the Commissioner's decision and award her benefits or to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 14.) The Commissioner responds that the RFC assessment is supported by substantial evidence. (ECF No. 15 at 5–8.)

"In the RFC assessment, the ALJ uses all relevant evidence, medical or otherwise, to determine a claimant's 'ability to meet the physical, mental, sensory, and other requirements of work.'" *Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018) (quoting 20 C.F.R. §§ 404.1545, 416.945). The ALJ's decision "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). "Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). Stated another way, "the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis deleted) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

With regard to Claimant's fibrosis of the liver, the ALJ in this case began his RFC assessment by summarizing Claimant's hearing testimony, noting in particular her reports of "daily symptoms of abdominal pain that occasionally require emergency room treatment due to intensity of symptoms." (Tr. at 21.) His review of the medical evidence of record includes a description of emergency room treatment records for abdominal pain and fatigue in December 2016 and January 2017, treatment by a gastroenterologist in 2017, and FibroScan findings of F2 in April 2017 and F4 in November 2018. (*Id.* at 22–23.) The ALJ also observed that despite her gastroenterologist's recommendation that she undergo a colonoscopy and an endoscopy to determine the source of her symptoms, "there is no evidence in the record these procedures were ever completed." (*Id.* at 23.) Claimant's failure to comply "with recommended workup" ultimately led him to conclude that Claimant's subjective complaints of abdominal pain were not as limiting as she alleged. (*Id.* at 25.) This is an appropriate reason for discounting a claimant's subjective complaints. *Dunn v. Colvin*, 607 F. App'x 264, 275–76 (4th Cir. 2015).

Claimant takes issue with the ALJ's statement that "there is nothing in the record to support such intense symptoms" of abdominal pain, arguing that it can be attributed to her "progressing liver dysfunction recognized as severe liver disease consistent with cirrhosis." (ECF No. 13 at 10; *see* Tr. at 25.) However, it does not appear that her gastroenterologist ever made such a definite connection: his most recent treatment notes from April 30, 2018, indicate a recommendation that Claimant reschedule her endoscopy and colonoscopy "to assess [nausea/vomiting], abdominal pain and melena." (Tr. at 688.) This seems consistent with the ALJ's determination. Additionally, despite her assertion that "fatigue is a symptom associated with [her] significant liver disease," Claimant never reported fatigue to her gastroenterologist. (*See, e.g., id.* at 689, 695, 700,

13

705.) The sole mention of fatigue associated with abdominal pain is upon Claimant's admission to the emergency room for hypotension in January 2017. (*Id.* at 395.) In short, Claimant merely speculates about the link between her alleged symptoms and her fibrosis of the liver. More importantly, though, she has not offered any evidence that her fibrosis of the liver requires functional limitations that the ALJ's RFC assessment does not accommodate. (ECF No. 13 at 9–11.) "[I]t is not enough to merely point to a medical diagnosis in order to establish disability. Instead, Claimant must also show how that condition results in actual functional limitation." *Parsons v. Berryhill*, No. 3:18-cv-01107, 2019 WL 2252023, at *11 (S.D.W. Va. May 2, 2019), *adopted by* 2019 WL 2256395 (S.D.W. Va. May 24, 2019). She has not done so here.

Claimant's argument that the ALJ inadequately considered her obesity is also without merit. (ECF No. 13 at 11–13.) The ALJ noted that Claimant's BMI indicated that she is obese and approaching "extreme obesity." (Tr. at 22.) He identified how obesity may further limit an individual with cardiovascular or respiratory issues and "arthritis affecting a weight-bearing joint"—conditions from which Claimant suffered, according to his review of the medical evidence of record. (*Id.* at 22–24.) He also observed that obesity may more generally "limit an individual's ability to sustain" full-time work. (*Id.* at 22.) He stated, "These considerations have been taken into account in reaching the conclusions herein." (*Id.*) Claimant is correct that the ALJ never explicitly mentions her obesity in the remainder of his RFC assessment. (ECF No. 13 at 12–13.) However, his discussion of the state-agency medical consultants' opinions shows that he applied the principles from his earlier discussion of Claimant's obesity to the RFC assessment. (*See* Tr. at 25–26.) The state-agency consultant at the initial determination level explained that her joint pain "could be aggravated by her obesity" and concluded that her activities

14

of daily living "indicate light work." (*Id.* at 79, 91.) The ALJ assigned "significant weight" to her opinions but reasoned that Claimant was instead limited to sedentary exertion, citing her left knee meniscal tear, symptoms of chronic obstructive pulmonary disease, and obstructive sleep apnea. (*Id.* at 26.) This indicates that he properly considered the effects of Claimant's obesity in his RFC assessment. *See Allen v. Colvin*, No. ADC-16-cv-2557, 2017 WL 2399591, at *6 (D. Md. June 1, 2017); SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). Notably, Claimant again fails to articulate how her obesity is more limiting than the ALJ determined it to be. (ECF No. 13 at 11–13.)

In sum, the undersigned **FINDS** that the ALJ adequately addressed Claimant's fibrosis of the liver and obesity in his RFC assessment.

## IV. CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 12), **GRANT** the Commissioner's request to affirm his decision (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.

Extension of this time period may be granted for good cause shown.  Copies of any objections shall be served on opposing parties and provided to Judge Faber.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.  28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: December 22, 2020

Dwane L. Tinsley
United States Magistrate Judge